IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROLYN LOCUST, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 04-1390 ) |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) |
| Defendant. | ) |

MEMORANDUM ORDER

CONTI, District Judge

### *Introduction*

Pending before the court is an appeal from the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying the claim of Carolyn Locust ("plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 423, *et seq.* Plaintiff contends that the decision of the administrative law judge (the "ALJ") that she was not disabled, and therefore not entitled to benefits, during the period January 2, 1999 through November 18, 1999 should be reversed because the decision is not supported by substantial evidence and that she should be awarded DIB for that period. Defendant asserts that the decision of the ALJ is supported by substantial evidence. The parties filed cross-motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The court will deny plaintiff's motion for summary judgment and grant defendant's motion for summary judgment because the ALJ's decision is supported by substantial evidence.

### *Procedural History*

Plaintiff was found to be disabled within the meaning of the SSA beginning on her fiftieth birthday, November 19, 1999, but was found not disabled prior to that date. (R. at 35-40.) Plaintiff filed the application dated October 22, 1999 for DIB at issue in this appeal on November 23, 1999, asserting a disability since January 2, 1999. (R. at 102-04.) She asserted disability by reason of chronic neck, back and shoulder pain, as well as depression. She was awarded a partially favorable decision and was found to be disabled commencing November 19, 1999, but not prior to that date. (R. at 40.) Upon request for review of the unfavorable part of the decision (R. at 82), the Appeals Counsel on October 11, 2002 remanded this case for further proceedings. (R. at 84-87.) After the remand, a hearing was held on June 4, 2003 before the ALJ. (R. at 49-61.) Plaintiff appeared at the hearing and testified. (R. at 54-57.) A vocational expert (the "VE") also testified. (R. at 56-60.) Plaintiff was represented by an attorney at the hearing (R. at 49.) In a decision dated August 28, 2003, the ALJ determined that plaintiff was not disabled during the period January 2, 1999 through November 18, 1999, and, therefore, not entitled to benefits during that period. (R. at 14-23.) Plaintiff timely requested a review of that determination (R. at 10) and by letter dated August 5, 2004, the Appeals Council denied the request for review. (R. at 5-7.) Plaintiff subsequently commenced the present action seeking judicial review.

### *Legal Standard*

The Congress of the United States provides for judicial review of the Commissioner's denial of a claimant's benefits. 42 U.S.C. § 405(g). This court must determine whether there is

substantial evidence which supports the findings of the Commissioner.  42 U.S.C. § 405(g). "Substantial evidence is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate.'"  Ventura v. Shalala, 55 F. 3d 900, 901 (3d Cir. 1995)(quoting Richardson v. Perales, 402 U.S. 389 (1971)).  This deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla."  Burns v. Burnhart, 312 F. 3d 113, 118 (3d Cir. 2002).  This standard, however, does not permit the court to substitute its own conclusions for that of the fact-finder.  Id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001)(reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless of whether the court would have differently decided the factual inquiry).

### *Plaintiff's Background and Medical Evidence*

Plaintiff was born on November 19, 1949.  (R. at 105.)  Plaintiff is twice divorced and resides alone.  (R. at 301.)   Plaintiff is a high school graduate and has no further education.  (R. at 54.)  Plaintiff has prior relevant work experience as a bus driver and a cashier checker.  (R. at 56, 123.)  Plaintiff, at the hearing before the ALJ on June 4, 2003, testified that after an accident on January 2, 1999, which was the precipitating cause of her alleged disability,:  "I have not been able to function like I did prior to the accident and I continue to get worse."  (R. at 55.)  Plaintiff in her adult disability report, dated December 6 1999, complained of the following conditions that limited her ability to work: "neck, back conditions, shoulder has limitations since surgery, and depression."  (R. at 122.)  The surgery referred to occurred on May 25, 1999.  (R. at 124.) Plaintiff is taking the following three medications: prozac for her depression, amigesic and

ultram for pain. (R. at 127.) In her daily activities questionnaire plaintiff noted that her daily activities consist of taking a shower or bath, eating breakfast, watching tv, taking a nap, eating dinner and getting ready for bed and watching tv until she falls asleep. (R. at 146.) She reported that she cleans her home, does her own shopping, prepares simple meals, drives a car and handles her own bills. (R. at 148.)

On January 4, 1999, Dr. M. Ilyas, a radiologist, reported that plaintiff's spine showed no fracture or dislocation and that there was a "slight narrowing of disc space between L3-L4. There is no evidence of fracture or dislocation of the lumbosacral spine." (R. at 168.) Plaintiff had physical therapy in February 1999, which consisted of moist heat, electrical stimulation and manual therapy techniques, and her treatment program was reflected as an exercise program. (R. at 202-04.) She continued in physical therapy in March 1999 and reported on March 6, 1999, that she was "still sore but she is ok today." (R. at 210.) On March 11, 1999, during physical therapy plaintiff reported "my neck and whole back hurt." (R. at 213.) On March 16, 1999, during physical therapy she reported she was "a little bit better." (R. at 214.) The evaluations during physical therapy were indicating some slight improvements in her positive findings. (R. at 215-17.)

On May 6, 1999, plaintiff was seen by Richard S. Gehl, M.D., an orthopedic surgeon for her shoulder problems. (R. at 221.) Dr. Gehl noted that plaintiff's pain in her shoulder caused her not to be able to continue physical therapy and that the MRI showed a rotator cuff tear. (R. at 221.) Dr. Gehl recommended rotator cuff repair of the left shoulder. (R. at 222.) Plaintiff underwent surgery on May 25, 1999 and the rotator cuff was repaired. (R. at 223.)

Plaintiff on June 30, 1999, was "having some achy pain and pins and needles in her shoulder." (R. at 225.) She had a manipulation of a frozen shoulder and was reported on August 25, 1999 to "still has some achy pain, but much better ROM [range of motion]." (R. at 227.) On September 22, 1999, Dr. Gehl reported that plaintiff regained a lot of mobility, but still has some weakness and in the plan stated: "[H]opefully we can clear her to return to work." (R. at 228.) On October 6, 1999, Dr. Gehl reported: "Patient has no significant complaints referable to her left shoulder" and that "patient can return to work as far as her shoulder is concerned." (R. at 229.)

At plaintiff's initial visit on November 29, 1999 to the Medical Wellness Associates she reported, among other things, that "she is improving slowly since February of 1999." (R. at 284.) On January 19, 2000, plaintiff's physician, Dr. C.C. Iannuzzi, signed a form relating to plaintiff's monthly visits between January 2, 1999 and December 30, 1999. The physician's notes on that report are sketchy. The report was not completely filled in and had only a conclusory prognosis of "poor." (R. at 290-93.) On December 11, 1999, Dr. Iannuzzi filled out a form for Nationwide Insurance Enterprise and reflected that plaintiff should be able to return to work "after all treatments are over" and that she was still being treated. (R. at 300.)

On January 3, 2000, Steven Pacella, Ph.D., performed a clinical psychological disability examination of plaintiff. (R. at 301.) He noted that plaintiff "denied in or out-patient psychiatric care, other systemic illness . . . or any other CNS insult." (R. at 301.) Dr. Pacella opined that from a psychological viewpoint plaintiff "remains able to react adequately to normal job circumstances (deadlines and schedules) and should be able to work within a schedule, attend to a task, sustain a routine and work at a consistent, competitive pace – assuming no physical

contraindication." (R. at 304.) In the psychiatric review technique form reviewed on January 19, 2000, by Manella Link, Ph.D., there were: a) no severe medical impairments noted; b) no evidence of organic mental disorders noted; c) no evidence of a schizophrenic, paranoid or other psychotic disorders noted; d) no evidence of affective disorders noted; and e) no evidence of an anxiety related disorder noted, but, a somatoform disorder indicating "physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms" was noted. (R. at 305-10.) It was also noted that she had only a slight restriction of activities of daily living, slight difficulties in maintaining social functioning, seldom had deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner and had no episodes of deterioration or decompensation in work or work-like settings. (R. at 312.)

On or about March 15, 2000, plaintiff was examined by Dr. Anna Matthew. In the history section of Dr. Matthew's report, Dr. Matthew noted that after the rotator cuff tear surgery plaintiff stated "that the surgery has helped decrease the pain in the left shoulder, but there is still soreness." (R. at 314.) Plaintiff also reported that she had physical therapy for her neck and low back "which helped somewhat. She was discharged with a home exercise program." (R. at 314.) Plaintiff also reported that she had manipulative treatments, but there has been no improvement and reported that she was taking prozac, carsoprodol for spasms, roxicet as need for pain, amigesic twice a day, ultram 50 mg. as needed, relafen 750 mg. bid., hydrocodone as needed for pain, synthroid and zocor. (R. at 316.) Recommendations of Dr. Matthew were that plaintiff's functional capacity evaluation placed her at light level work and that plaintiff should periodically change positions as required. (R. at 318.) Dr. Matthew also noted that plaintiff was not exercising and that "doing this, would improve her functional status." (R. at 319.)

Dr. Nghia Tran on May 5, 2000, completed a physical residual functional capacity assessment. (R. at 332-39.) Findings in the assessment were that plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds; could stand and/or walk for a total of about six hours in an eight-hour workday; could sit for about a total of six hours in an eight-hour workday; and had unlimited capability to push and/or pull. (R. at 333.) Plaintiff had no manipulative, visual, communicative or environmental limitations. (R. at 335-36.) Dr. Tran noted: "Based on her longitudinal history and pain medication she has pain, but the degree of physical limitation is slightly exaggerated. Clt's statement is partially credible." (R. at 337-38.)

Plaintiff was seen on November 28, 2000, at the Western Psychiatric Institute and Clinic. (R. at 352.) It was reported that plaintiff was "doing quite well considering her ongoing family stressors." The impression was MDD, recurrent, moderate. (R. at 352.) On January 8, 2001, plaintiff was seen at the Western Psychiatric Institute and Clinic and, at that time, it was noted that she had a GAF score 65 and that "[o]verall she was pleasant and engaging and presented no major concerns." (R. at 406.)

On January 4, 2001, Dr. Iannuzzi completed a physical capacity evaluation form (R. at 366-67) in which it was noted that plaintiff's disability began January 2, 1999 and lasted continuously since then. (R. at 367.) Dr. Iannuzzi checked boxes indicating that plaintiff could stand/walk less than one hour in an eight-hour day, sit less than one hour in an eight-hour work day, lift five pounds or less, only do occasional lifting, could not push or pull or use her hands for fine manipulation, and could not crawl or climb. (R. at 366-67.) Dr. Iannuzzi also sent a letter to County Allegheny on June 25, 2002, in which it was stated: "This letter certifies that Carolyn

7

Locust is permanently and chronically disabled. She is unemployable. She became permanently disabled as of year 1999." (R. at 373.)

    The ALJ posed the following hypothetical to the VE:

> ALJ: [A]ssume that we have an individual of the same age, education, and work history as this Claimant. And further assume that on an exertional basis, the individual could perform the exertional requirements of sedentary work with the – but has additional non-exertional limitations. That the individual would not be able to engage in any repetitive bending. The individual would not be able to stand for any prolonged periods – stand or walk for any prolonged periods. That the individual would need to be able to change position from sitting to standing or vice-versa at least every 15 to 20 minutes. The individual would be limited to simple, routine, repetitive tasks that would involve minimal contact with the public. And the individual would not be able to reach above shoulder level with the left hand or arm. I think – I do need to clarify one thing. You are right-handed, is that correct?
>
> Claimant: No, sir. I'm left-handed.
>
> ALJ: You're left-handed?
>
> Claimant: Yes.
>
> ALJ: Okay. That's your dominant hand?
>
> Claimant: Yes.
>
> ALJ: Okay. Also assume that the individual is left-hand dominant. Assuming these things, do you have an opinion as to whether or not there are jobs that exist in several regions of the national economy that such an individual could perform?

(R. at 56-57.) The VE testified that there were jobs in the national economy that such a hypothetical person could perform including bench occupations, glass, plastics, electronic industry, sorter, assembler, and inspector. (R. at 58.)

Plaintiff was found to be disabled on November 19, 1999 – her fiftieth birthday. (R. at 49.) The issue pending before this court is whether plaintiff was disabled during the period January 2, 1999 – November 18, 1999 when she was under fifty years of age.

### *Discussion*

Under Title XVI of the SSA, a disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Similarly, a person is unable to engage in substantial gainful activity when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 1382c(a)(3)(B).

In order to make a disability determination under the SSA, a five-step sequential evaluation must be applied. 20 C.F.R. § 416.920. The evaluation consists of the following stages: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the claimant's severe impairment meets or equals the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if not, whether the claimant's impairment prevents him from performing his past relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy in light of his age, education, work experience and residual functional

capacity. 20 C.F.R. §§ 404.1520, 416.920; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000). If the plaintiff fails to meet the burden of proving the requirements in the first four steps, the administrative law judge may find that the plaintiff is not disabled. Burns v. Burnhart, 312 F.3d at 119. The Commissioner is charged with the burden of proof with respect to the fifth step in the evaluation process. Id.

In the instant case, the ALJ found: (1) plaintiff has not engaged in substantial gainful activity since the alleged onset of disability on January 2, 1999; (2) plaintiff suffers from chronic neck, shoulder and back pain and depression, which are severe; (3) these impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) plaintiff cannot return to any past relevant work; and (5) there were jobs in the national economy that plaintiff could perform during the time period January 2, 1999 through November 18, 1999. (R. at 16, 21-22.)

Plaintiff argues that the ALJ's decision denying her benefits during the relevant period was not based upon substantial evidence. She asserts that the ALJ erred in the fifth step of the evaluation process. Plaintiff argues that the ALJ erred in concluding that the plaintiff could perform a significant range of light work and work at the full range of the sedentary level. Plaintiff asserts that her treating physician, Dr. Iannuzzi, found that she was limited to lifting less than five pounds occasionally and could stand or walk less than one hour in an eight-hour day, sit for less than one hour in an eight-hour day, and that she was disabled as of the year 1999. Plaintiff argues that the treating physician's opinion should have been given more weight than that of a one-time consultative examiner or a non-examining physician. Plaintiff argues that the medical evidence from Dr. Iannuzzi indicates that she could not perform above a sedentary level

and was even incapable of sedentary work. Defendant responds that plaintiff is raising only issues of physical impairments, substantial evidence supports the ALJ's findings and there are no issues before this court relating to her mental status.

In making disability determinations, an administrative law judge has a duty to consider the opinions of treating physicians and to give them substantial weight. "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)).

Even if a treating physician bases his medical judgment upon a plaintiff's subjective complaints, the administrative law judge can only reject the treating physician's medical opinion if there is contradictory medical evidence. Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988) (reversing an administrative law judge who rejected the plaintiff's medically credited symptomatology and instead relied upon his own observations of the plaintiff and the plaintiff's testimony that he could perform limited household chores). Essentially, an administrative law judge is required to review all the evidence presented and explain why he rejects probative conflicting evidence. See Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).

A treating physician's opinion on the issue of whether a claimant is unable to work, however, does not bind the Commissioner – that decision is solely the responsibility of the administrative law judge. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1)-(3); see Adorno v. Shalala, 40 F.3d 43, 47-48 (3d Cir. 1994) (treating physician's opinion that claimant is disabled or unable to work is not dispositive). Also, when a physician's opinion is inconsistent or

unsupported by the record, the administrative law judge may give that opinion less weight. 20 C.F.R. §§ 404.1527(d)(3),(4), 416.927(d)(3),(4).

      The ALJ concluded that plaintiff was limited to sedentary work and that as of her fiftieth birthday, she would be disabled pursuant to the vocational-medical guidelines. Prior to the plaintiff's fiftieth birthday the ALJ found plaintiff could perform a significant number of sedentary jobs. The ALJ, therefore, concluded plaintiff was not disabled prior to November 19, 1999. (R. at 21.) The ALJ did not afford significant weight to Dr. Iannuzzi's functional capacity assessment. (R. at 19.) The ALJ rejected Dr. Iannuzzi's assessment in light of other medical opinions. (R. at 19.) The contradictory medical assessments are found in the opinions of Dr. Matthew, an examining physician, (R. at 321-21), and Dr. Tran, a state agency reviewing physician. ( R. at 332-39). Those medical opinions reflect that plaintiff could perform a range of sedentary work. In addition, Dr. Gehl indicated that plaintiff could return to work as of October 1999. The ALJ also concluded that there were objective clinical and diagnostic findings in the record which contradicted Dr. Iannuzzi's findings. (R. at 19.) The clinical and diagnostic findings included x-rays and MRIs (R. at 168, 288-89) and a normal range of motion in plaintiff's neck, shoulders, lumbar spine and hips. (R. at 317.) The treating physician's opinion is not always entitled to controlling weight if there are conflicting medical opinions and the administrative law judge, after considering all the evidence, provides his reasons for discounting the rejected evidence. Here, that ALJ considered all the evidence and provided his reasoning for discounting Dr. Iannuzzi's findings.

      In addition, Dr. Iannuzzi's findings were contained in a check list format with little details, making the findings somewhat suspect. See Brewster v. Heckler, 786 F.2d 581 (3d Cir.

1986). Dr. Tran's conclusory opinion as to total disability is not entitled to weight. See Adorno, 40 F.3d at 47-48. The ALJ did not err in the weight afforded Dr. Iannuzzi's findings. See Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). The court concludes, based upon a review of the record as a whole, that there is substantial evidence in the record to support the ALJ's determination that plaintiff could perform sedentary work and thus did not err in the fifth step of the sequential evaluation.

*Conclusion*

Based upon the evidence of record, the parties' arguments and supporting documents filed in support and opposition thereto, this court concludes that substantial evidence supports the ALJ's finding that plaintiff is not disabled. The decision of the ALJ denying plaintiff's application for DIB during the period January 2, 1999 through November 18, 1999, is affirmed.

Therefore, plaintiff's motion for summary judgment (Docket No. 10) is **DENIED**, and defendant's motion for summary judgment (Docket No. 12) is **GRANTED**.

**IT IS ORDERED AND ADJUDGED** that judgment is entered in favor of defendant, Jo Anne B. Barnhart, Commissioner of Social Security, and against plaintiff, Carolyn Locust.

The clerk shall mark this case as closed.

By the court:

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

Dated: March 27, 2006

cc: counsel of record